## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| DERRIC JACKSON,<br>    Plaintiff, | )<br>)<br>) |
| v. | )<br>)     CIVIL ACTION NO. 1:21-00315-N<br>) |
| KILOLO KIJAKAZI, *Acting<br>Commissioner of Social Security*,<br>    Defendant. | )<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Derric Jackson brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 16, 17, 24) and those portions of the transcript of the administrative record (Doc. 13) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 9, 10; 11/8/2021 text-only order of reference). With the Court's consent, the parties waived the opportunity to present oral argument after briefing closed. (*See* Docs. 26, 27).

## I.    *Procedural Background*

Jackson protectively filed the subject DIB application with the Social Security Administration ("SSA") on October 30, 2019. After the application was denied initially, and again on reconsideration, Jackson requested, and on December 9, 2020, received, a hearing on his application with an Administrative Law Judge ("ALJ") of the SSA's Office of Hearings Operations. On January 28, 2021, the ALJ issued an unfavorable decision on Jackson's application, finding him not entitled to benefits. (*See* Doc. 13, PageID.793-812).

The Commissioner's decision on Jackson's application became final when the Appeals Council for the SSA's Office of Appellate Operations denied his request for review of the ALJ's unfavorable decision on May 26, 2021. (*See id.*, PageID.782-786). Jackson subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the

Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district

court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference

---

where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate").

and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)  (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires, among other things, that a claimant be "under a disability[,]" 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v.*

*Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ found that Jackson met the applicable insured status requirements through December 31, 2024, and that he had not engaged in substantial gainful activity since the alleged disability onset date of August 1, 2019.[7] (Doc. 13, PageID.798-799). At Step Two, the ALJ found that Jackson had the following severe impairments: osteoarthritis of the left knee and lumbar spine; lumbar radiculopathy; obstructive sleep apnea; hearing impairment/tinnitus; and cervical spondylosis.[8] (Doc. 13, PageID.799-800). At Step Three,[9] the ALJ found that Jackson did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 13, PageID.800).

At Step Four,[10] the ALJ determined that Jackson had the residual functional capacity (RFC) "to perform a range of light work as defined in 20 CFR 404.1567(b).[11] Specifically, he can occasionally lift/carry up to twenty pounds and

---

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary,

can frequently lift/carry ten pounds[;] can stand/walk for six hours and sit for six hours per workday[;] can never use leg/foot controls, crawl, kneel, work at unprotected heights, work around hazardous moving equipment where the entire apparatus moves, drive commercial vehicles, or work around 'very loud' noise[;] can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds[;] can never operate handheld vibrating equipment (where the entire device is held in the hands)[;] can occasionally perform overhead work[;] and can occasionally crouch or stoop." (Doc. 13, PageID.800-806). Based on the RFC, the ALJ found that Jackson was unable to perform any past relevant work. (*Id.*, PageID.806).

However, at Step Five, after considering the testimony of a vocational expert,[12] the ALJ found that there exist a significant number of jobs in the national

---

light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational

economy as a layaway clerk and customer service clerk that Jackson could perform given his RFC, age, education, and work experience. (Doc. 13, PageID.806-807). Thus, the ALJ found that Jackson was not "disabled" under the Social Security Act. (*Id.*)

## IV.   *Analysis*

### a.   **Prior Administrative Findings**

Medical opinions and prior administrative findings are two categories of evidence the Commissioner considers in making disability determinations. *See* 20 C.F.R. § 404.1513(a). The regulations define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: ... (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work,

---

expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2). "A prior administrative medical finding is a finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review … in [the claimant's] current claim based on their review of the evidence in [the] case record…" 20 C.F.R. § 404.1513(a)(5).

The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). However, the Commissioner "will articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." *Id.* § 404.1520c(b). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions or prior administrative medical findings from that medical source together using [the following] factors[,]" *id.* § 404.1520c(a): supportability, consistency, relationship with the claimant, specialization, and "other factors." *Id.* § 404.1520c(c).

"The most important factors [the Commissioner] consider[s] when … evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability … and consistency…" *Id.* § 404.1520c(a). *Accord*

*id.* § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." *Id.* § 404.1520c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" *Id.* § 404.1520c(b)(3).

Here, in the section of her decision devoted to addressing medical opinions and prior administrative medical findings, the ALJ stated:

> [T]he opinion of the state agency physician is somewhat persuasive. This individual has familiarity with the requirements of disability evaluation under the regulations. Likewise, the opinions provided are generally consistent with the evidence and well supported by

documented evidence from the record. Although work at the light exertional level is ultimately described above, the opinions of this individual are consistent with the record.

(Doc. 13, PageID.805).

As Jackson correctly points out, the ALJ's decision only references the "opinion" of a singular "state agency physician" and "[t]his individual," even though four different state agency physicians provided prior administrative medical findings in Jackson's case: Linda Duke, Ph.D, and George W. Hall, M.D., on the initial denial of Jackson's application (*see id.*, PageID.872-876); and Robert Estock, M.D. and Victoria L. Hogan, M.D., in denial on reconsideration (*see id.*, PageID.889-893). Jackson argue the ALJ's decision is insufficient to show that she individually considered the prior administrative medical findings of all medical sources in accordance with § 404.1520c, and particularly those of Drs. Duke and Estock.

While it is a close call—the ALJ's decision certainly could have been more detailed, and her erroneous statements that only a single individual state agency physician had provided an opinion were unfortunate—her decision is minimally adequate to indicate that the ALJ considered all prior administrative findings under the proper standards, and Jackson has failed to persuade the undersigned that the ALJ's inartful statements constitute more than harmless error.  While the ALJ repeatedly refers to a state agency physician in the singular, in the same paragraph she later refers to "opinions" plural, suggesting that she did in fact review multiple state agency physicians' prior administrative findings. The ALJ also preceded her discussion of the medical opinions and prior administrative

medical findings of record with a thorough discussion of the objective evidence, then stated that the state agency physician "opinions provided are generally consistent with the evidence and well supported by documented evidence from the record." Nevertheless, the ALJ also found the record ultimately supported "work at the light exertional level[,]" and thus assigned only "somewhat persuasive" value to the state agency prior administrative findings. Given that both the initial and reconsideration prior administrative medical findings had found Jackson capable of medium work (*see* Doc. 13, PageID.876, 893), this is further evidence that the ALJ did in fact independently evaluate both the consistency and supportability of the prior administrative findings based on the record as a whole.

Jackson has also failed to convince the undersigned that the ALJ's decision would have changed had she specifically addressed Dr. Duke and Dr. Estock's prior administrative medical findings and found them persuasive.[13] In claiming the ALJ's error was not harmless, Jackson points out that Dr. Duke opined "Jackson had disorders of the back – discogenic and degenerative and osteoarthrosis and allied disorders as medically determinable impairments[,]" and that "Dr. Estock found … Jackson to have the same medically determinable impairments as Dr. Duke[,]" with the addition of "sleep-related breathing disorders." (Doc. 16, PageID.1154 (quotation

---

[13] An ALJ's harmless errors do not warrant reversal of a final decision. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). An "error is harmless if it did not affect the judge's ultimate determination[,]" *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (per curiam) (unpublished) (citing *Diorio*, 721 F.2d at 728); *accord Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016) (per curiam) (unpublished), and the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009).

marks omitted)). However, the ALJ reached the same conclusions at Step Two of her decision, finding that Jackson had the severe impairments of obstructive sleep apnea (i.e. a "sleep-related breathing" disorder"), left-knee and lumbar osteoarthritis, lumbar radiculopathy, and cervical spondylosis (i.e., "disorders of the back – discogenic and degenerative," and "osteoarthrosis and allied disorders").[14] Jackson also points out that both Dr. Duke and Dr. Estock noted he had undergone "counseling w/VA," but he fails to elaborate on the significance of that observation; regardless, that observation was not a prior administrative medical finding or medical opinion, but simply the state agency physicians' description of Jackson's medical history. And notwithstanding the foregoing, Jackson has failed to show how the ALJ's granting greater persuasive weight to the prior administrative medical findings would have benefitted him, since the ALJ appears to have found him to be more impaired than the prior administrative medical findings did, limiting him to a range of light work, rather than medium work as the prior administrative findings did.

---

[14] *See* https://www.mayoclinic.org/diseases-conditions/cervical-spondylosis/symptoms-causes/syc-20370787 (last visited Sept. 29, 2022) ("Cervical spondylosis is a general term for age-related wear and tear affecting the spinal disks in your neck. As the disks dehydrate and shrink, signs of osteoarthritis develop, including bony projections along the edges of bones (bone spurs)."); https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy (last visited Sept. 29, 2022) ("Your spine is made of many bones called vertebrae, and your spinal cord runs through a canal in the center of these bones. Nerve roots split from the cord and travel between the vertebrae into various areas of your body. When these nerve roots become pinched or damaged, the resulting symptoms are called radiculopathy … When radiculopathy occurs in the lower back, it is known as lumbar radiculopathy, also referred to as sciatica because nerve roots that make up the sciatic nerve are often involved.").

In sum, Jackson has failed to show reversible error in the ALJ's consideration of the prior administrative medical findings of record.

### b.   Hearing Impairments

Jackson next claims the RFC is reversibly flawed because the ALJ failed to include any limitations accounting for his hearing impairments, despite finding that Jackson's "hearing impairment/tinnitus" was a severe impairment at Step Two. The undersigned is not convinced.

At Step Two, the Commissioner considers whether a claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). "Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam). However, the Step Two "severe impairment" inquiry is merely "a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " *Id.* at 1265 (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' " *Id.* (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031)). Thus, the mere fact that an impairment is found "severe" at Step Two does not mean it will result in disabling limitations at the later steps.

The ALJ expressly discussed Jackson's hearing impairments at Step Four, as

follows:

> Records do list tinnitus [and] impaired hearing … as a portion of his
> partial disability rating [with the Department of Veterans Affairs].
> However, there was no indication of further information beyond the
> diagnosis and the rating at that time (Exhibit 3F). The claimant
> acknowledged that he regularly listens to television and despite one
> concern by his representative that he could have had trouble hearing
> her, he voiced very few complaints even during the telephone hearing.
> There is no indication of hearing aids or other hearing problems …
> Although there is no treatment, the VA rating of 10% for hearing loss
> and tinnitus would suggest a reasonable extrapolation that there
> might be as much as a need for preclusion of work around 'very loud'
> noise but no basis to support further limitations.

(Doc. 13, PageID.803-804).

Thus, it is reasonably apparent from the ALJ's decision that, despite giving
Jackson the benefit of the doubt at Step Two in finding his hearing impairments to
be severe, she ultimately concluded the record evidence did not support a finding
that those impairments substantially impacted Jackson's ability to work. Thus, the
ALJ declined to include any additional limitations in the RFC related to Jackson's
hearing impairments beyond precluding him from working around "very loud"
noises.[15] Jackson has shown no error in this regard.

### c.   Vocational Expert Testimony

In *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th
Cir. 2018), [the Eleventh Circuit Court of Appeals] considered the
effect of Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4,

---

[15] Jackson suggests such a limitation makes no sense, but there are reasonable
explanations for including it. "Very loud" noises might exacerbate any tinnitus, and
(as the Commissioner suggests) such noises combined with slight hearing loss might
make it more difficult for Jackson to differentiate sounds occurring at the same time
(i.e., hearing a coworker speak).

2000), which addresses what ALJs must do to resolve conflicts between the D[ictionary of Occupational Titles[16]] and expert testimony. [The court] held in *Washington* that "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." 906 F.3d at 1362. *See also id.* at 1365 ("SSR 00-4p is properly understood to impose an affirmative duty on the ALJs to identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision."). A conflict is "apparent," [the court] explained, when it is "reasonably ascertainable or evident," i.e., when it is "seeming[ly] real or true, but not necessarily so." *Id.* at 1366 (citation and internal quotation marks omitted).

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021).

"Whenever a conflict is 'apparent,' the ALJ must … ask the VE about it. Moreover, when an ALJ identifies an apparent conflict that was not raised during a hearing, the ALJ can request an explanation of the conflict by submitting interrogatories to the vocational expert. During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a

---

16

    [T]he SSA "rel[ies] primarily on the DOT ... for information about the requirements of work in the national economy." SSR 00-4p, 2000 WL 1898704, at *2. [Title] 20 C.F.R. § 416.966(d) explicitly names the DOT as one of the main sources of jobs data the SSA relies on, and provides that ALJs "will take administrative notice of reliable job information available" in the DOT. This subsection places the DOT first in its list of reliable government sources. *Id.* … [O]ther SSA Rulings describe the DOT as "authoritative." <u>See, e.g.</u>, SSR 96-9p.

*Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364–65 (11th Cir. 2018).

party, and resolve them." *Washington*, 906 F.3d at 1363 (citation and quotation omitted).

Jackson claims that the ALJ failed to resolve apparent conflicts between the VE's testimony that Jackson could perform the jobs of layaway clerk and customer service clerk, and the RFC's limiting Jackson to only "occasionally" performing overhead work, crouching, and stooping. With regard to stooping and crouching, there is no conflict at all because, as the Commissioner correctly points out, the DOT expressly states that neither of those activities is involved in either position. *See* 299.467-010 *Layaway Clerk*, DICOT 299.467-010, 1991 WL 672637; 299.367-010 *Customer-service Clerk*, DICOT 299.367-010, 1991 WL 672630. As for "overhead work," the DOT does not use that specific phrase in describing either position. *See id.* It does state that both positions require frequent reaching, *see id.*, and Jackson argues that, because the DOT describes both positions as involving placing merchandise on, and retrieving it from, shelves, the need to reach overhead can be reasonably inferred.

First, Jackson's argument that the use of shelves also favors an inference of stooping and crouching is not borne out by the DOT, which states that neither position involves those activities. However, to the extent this was an "apparent" conflict, the ALJ resolved it at the hearing by obtaining an explanation from the VE, who stated: "[O]verhead reaching is not specified in the DOT and certainly, that did require me to use my knowledge, training, education, and experience." (Doc. 13, PageID.859). The ALJ noted this explanation in her decision at Step Five. (*See id.*,

PageID.807 ("Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles as supplemented by the vocational expert's education, training, experience and research.")). Jackson fails to address the VE's explanation regarding overhead reaching, much less explain why it is insufficient or what more the ALJ should have done.[17]

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Jackson's application for benefits is therefore due to be **AFFIRMED**.

## V.  *Conclusion & Order*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Jackson's October 30, 2019 DIB application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and

---

[17]     Jackson also argues that the ALJ should have further explored whether the use of machinery to retrieve merchandise would be needed for either of the clerk positions. However, the DOT states that neither position involves working around "moving mech. parts," and nothing else in the DOT description of either position makes it "apparent" that the use of machinery is a significant part of either job. Contrary to Jackson's assertion, the requirement of "[a]rrang[ing] for gift wrapping, monogramming, printing, and fabrication" given for the customer-service clerk position, *see* DICOT 299.367-010, 1991 WL 672630, does not indisputably "reference[] the use of machines" (Doc. 16, PageID.1160), but instead refers to the clerical tasks leading up to such activities (e.g., taking orders, filling out and submitting appropriate paperwork).

Finally, Jackson also argues that the need to "frequently" talk and hear involved in both clerk jobs is inconsistent with his having hearing impairments. However, as was already explained, Jackson has not shown the ALJ committed any error in finding that his hearing impairments did not warrant any further limitations beyond what was in the RFC.

Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of September 2022.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**